IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | 8:05CR232 |
| | ) | |
| v. | ) | |
| | ) | **SENTENCING MEMORANDUM** |
| KARL GRINBERGS, | ) | |
| | ) | |
| Defendant. | ) | |
| ‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾ | ) | |

This matter is before the court for resentencing after remand from the Eighth Circuit Court of Appeals ("Eighth Circuit"). *See* Filing No. 81. This memorandum opinion supplements findings made on the record at a sentencing hearing on August 8, 2008.

### I.  FACTS

On June 22, 2005, defendant Grinbergs was charged with possession of child pornography, a violation of 18 U.S.C. § 2252(a)(4)(B). Filing No. 1, Indictment. By statute, the crime is punishable by imprisonment for up to ten years.  18 U.S.C. § 2252(a)(4)(b). Pursuant to a plea agreement, Grinbergs entered a plea of guilty to the charge. Filing No. 32, Plea Agreement.  In the plea agreement, the United States (hereinafter, "the Government") and the defendant agreed that U.S.S.G. § 2G2.2 of the United States Sentencing Guidelines ("the Guidelines") applied to Grinbergs's conduct and that his base offense level was 18.  *Id.* at 2.   The parties also agreed that certain Guidelines enhancements were applicable: a two-level increase for possession of materials involving prepubescent minors, a two-level increase for the use of a computer in the offense, and a four-level increase for possession of at least 200 images of child pornography.  *Id.*  The Government also advised the court that Grinbergs would be entitled to a three-level

reduction for acceptance of responsibility and agreed to recommend a sentence at the low end of the Guidelines sentencing range. *Id.* The court accepted Grinbergs's plea but deferred acceptance of the plea agreement pending the preparation of a Presentence Investigation Report (hereinafter, "PSR") by the United States Office of Probation (hereinafter, "the Probation Office") that calculated the defendant's Guidelines sentence.

The Probation Office based its outline of the offense conduct on the prosecutor's version of events and on law enforcement investigative reports. Filing No. 42, PSR at 4. After conducting an investigation into a Yahoo Internet account, law enforcement officers executed a search warrant at Karl Grinbergs's residence in Blair, Nebraska, on December 14, 2004. The officers found 348 images of child pornography on the hard drive of defendant's computer. *Id.* at 5.

The Probation Office agreed that U.S.S.G. § 2G2.2 provided the base offense level for a violation of 18 U.S.C. § 2252(a)(4) and determined that Grinbergs's base offense level should be 18. The Probation Office found the following adjustments were applicable: a two-level increase under U.S.S.G. § 2G2.2(b)(2) (for possession of material containing a prepubescent minor), a two-level increase under U.S.S.G. § 2G2.2(b)(6) (for use of a computer), and a four-level increase under U.S.S.G. § 2G2.2(b)(7) (for possession of more than 200 but less than 600 images). The application of these enhancements resulted in an adjusted offense level of 26. The Probation Office then subtracted three levels for the defendant's acceptance of responsibility under U.S.S.G. § 3E1.1, resulting in a total offense level of 23. Because Grinbergs had no criminal convictions, his criminal history category was I, which resulted in a Guideline imprisonment range of 46 to 57 months.

Neither party objected to the PSR.  Filing No. 35, Government's Adoption of the PSR; Transcript of Sentencing on April 17, 2006 ("Sent. Tr.") at 3.  Grinbergs moved for a departure, variance or deviation from the Guidelines by reason of his diminished capacity and emotional health at the time of the offense, and his extraordinary postoffense rehabilitation.  Filing No. 38.

At his sentencing hearing on April 17, 2006, Grinbergs introduced evidence that he had been diagnosed with a major depressive disorder and dysthymic disorder and had tried to commit suicide shortly after his arrest.  He submitted the unrebutted expert report of Chandra Petersen, a mental health and addiction therapist, who had been treating Grinbergs since August 2005.  Sent. Tr. at 6.  Petersen testified that she helped Grinbergs to cope with his depression and adjustment disorders.  Sent. Tr. at 22-25, 28, Sentencing Exhibits ("Sent. Exs.") 5 & 6.  She also testified that once Grinbergs's symptoms improved with medication, she developed a long-term treatment plan to enable him to accept responsibility for his crime, increase his self-esteem, set life goals, and cultivate empathy for his victims.  Sent. Tr. at 7, 25, 28.  She testified that she determined that Grinbergs had not been actively seeking child pornography when he first began to collect the images on his computer, but instead was "a victim of the Internet system."  *Id.* at 11.  She described Grinbergs as having an adolescent mind-set.  *Id.* at 14.  She stated that, although Grinbergs is intelligent, his depression, low self-esteem, and emotional immaturity made him crave attention, which he found through readily-accessible pornography.  *Id.* at 11, 19.  She further testified that Grinbergs did not comprehend that his conduct was wrong at the time he downloaded the images.  *Id.* at 11-12, 17.  Through therapy, however, he came to realize that his conduct had harmed the victims.  *Id.* at 12.  Petersen stressed that

3

Grinbergs was not a threat to children.  *Id.* at 14.  Petersen also stated that Grinbergs was not a typical child sex offender or a predator.  *Id.* at 13-14.

Grinbergs also offered the reports of his treating psychiatrists.  Sent. Exs. 1, 5, & 6.  Dr. Amy Schuett, staff psychiatrist at Douglas County Hospital, treated Grinbergs at the time of his suicide attempt in June 2005.  She diagnosed him with severe major depressive disorder. Sent. Tr. at 22-23, Sent. Ex. 1.  After Grinbergs was discharged from the hospital, he was treated by Dr. Eugene Oliveto, a psychiatrist at Lutheran Family Services.  Sent. Tr. at 23.  Dr. Oliveto described Grinbergs as a shy, depressed and withdrawn individual lacking in self-confidence whose identity "physically, socially and sexually was not well-formed."  Sent. Ex. 6 at 1-2.  Dr. Oliveto diagnosed adjustment disorder and dysthymic disorder and prescribed Zoloft and Seroquel.  Sent. Tr. at 24-26; Sent. Ex. 6 at 2.

This court found that Grinbergs's diminished capacity at the time of the offense as well as his extraordinary progress after the offense justified a below Guideline sentence. Sent. Tr. at 40-41; Filing No. 45, Statement of Reasons.  The court found that recurrent and severe depression affected Grinbergs's ability to appreciate the wrongfulness of his conduct at the time of his offense.  Sent. Tr. at 41.  Accordingly, the court departed from the Guideline range for diminished under U.S.S.G. § 5K2.13.  Sent. Tr. at 40-41; Filing No. 45, Statement of Reasons at 2.  The court found that Grinbergs was not a typical offender, that he had made extraordinary progress towards rehabilitation, that he did not pose a threat to children and that he could be successfully treated outside the prison system. Sent. Tr. at 41-42.  The court concluded that these facts also supported an "outside the heartland" departure under U.S.S.G. § 5K2.0.  *Id.*  Alternatively, the court found that a variance or deviation from the Guideline range would be appropriate under 18 U.S.C. §

3553(a). *Id. at* Sent. Tr. at 42.  The court concluded that a sentence of twelve months and one day of imprisonment would be sufficient but not greater than necessary to satisfy federal sentencing goals. Sent. Tr. at 43.

The Government appealed the sentence, and the Eighth Circuit Court of Appeals reversed.  *United States v. Grinbergs*, 470 F.3d 758, 761 (8th Cir. 2006), *cert. granted*, *vacated*, 128 S. Ct. 859 (Jan. 7, 2008) (No. 06-10045).  The Eighth Circuit found, under Eighth Circuit precedent then in force, that the circumstances of Grinbergs's case could not justify a seventy-five percent reduction from the Guidelines range and that Grinbergs's sentence was unreasonable under the circumstances. *Id.* at 762.  Grinbergs filed a petition for writ of certiorari, and that petition was granted.  *Grinbergs v. United States*, — U.S. —, 128 S. Ct. 859 (Jan. 7, 2008).  The United States Supreme Court vacated the Eighth Circuit's opinion and remanded the case for reconsideration under the standards announced in *Gall v. United States*, 552 U.S. —, —, 128 S. Ct. 586 (2007).  The Eighth Circuit, in turn, remanded the action to this court.

In connection with his resentencing, the court reviewed a report of Grinbergs's continuing therapy at Lutheran Family Services as well as a recent psychiatric assessment by Joseph F. Bertinetti, Ph. D.  Dr. Bertinetti concluded that an interruption in Grinbergs's treatment would be detrimental to his progress.

## II.  LAW

The Sentencing Guidelines are no longer mandatory.  *United States v. Booker*, 543 U.S. 220, 260-61 (2005).  In *Booker,* the Supreme Court held that the mandatory Sentencing Guidelines system violated the Sixth Amendment.  *Booker,* 543 U.S. at 226-27. In the *Booker* remedial opinion, the Supreme Court determined that the constitutional

5

violation would be cured by modifying the federal sentencing statute to make the Guidelines effectively advisory. *Id.* at 245. Consequently, the range of choice in sentencing dictated by the facts of the case has been significantly broadened. *Gall v. United States,* 552 U.S. at —, 128 S. Ct. at 602 (finding a sentence outside the Guidelines to be reasonable); *Kimbrough v. United States,* No. 06-6330, 552 U.S. —, —, 128 S. Ct. 558, 570 (2007) (noting that courts may vary from Guidelines ranges based solely on policy considerations, including disagreements with the Guidelines); *Rita v. United States,* 551 U.S. —, —, 127 S. Ct. 2456, 2465 (2007) (holding that a district court may consider arguments that "the Guidelines sentence itself fails properly to reflect § 3553(a) considerations"); *Cunningham v. California,* 549 U.S. —, —, 127 S. Ct. 856, 867 (2007) (stating that judges are no longer tied to the sentencing range indicated in the Guidelines but are obliged to "take account of" that range along with the sentencing goals Congress enumerated in 18 U.S.C. § 3553(a) of the Sentencing Reform Act). District courts must therefore "give respectful consideration to the Guidelines," but are permitted "'to tailor the sentence in light of other statutory concerns as well.'" *Kimbrough*, 552 U.S. at —, 128 S. Ct. at 570 (*quoting Booker,* 543 U.S. at 245-246); *Gall,* — U.S. at —, 128 S. Ct. at 596 (stating "[t]he Guidelines are not the only consideration, the district judge should consider all of the § 3553(a) factors"). These cases "mean that the district court is free to make its own reasonable application of the § 3553(a) factors, and to reject (after due consideration) the advice of the Guidelines." *Kimbrough,* 552 U.S. at —, 128 S. Ct. at 577 (Scalia, J., concurring).

The Sentencing Reform Act "contains an overarching provision instructing district courts to 'impose a sentence sufficient, but not greater than necessary' to accomplish the

goals of sentencing, including 'to reflect the seriousness of the offense,' 'to promote respect for the law,' 'to provide just punishment for the offense,' 'to afford adequate deterrence to criminal conduct,' and 'to protect the public from further crimes of the defendant.'" *Kimbrough,* 552 U.S. at —, 128 S. Ct. at 570 *(quoting* 18 U.S.C. § 3553(a)). The statute further provides that "in determining the appropriate sentence, the court should consider a number of factors, including 'the nature and circumstances of the offense,' 'the history and characteristics of the defendant,' 'the sentencing range established' by the Guidelines, 'any pertinent policy statement' issued by the Sentencing Commission pursuant to its statutory authority, and 'the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.'" *Id. (quoting* 18 U.S.C. § 3553(a)).   A sentencing judge has greater familiarity with an individual case and individual defendant than the Commission or the appeals court and is "therefore 'in a superior position to find facts and judge their import under § 3353(a)' in each particular case." *Id.,* 552 U.S. at —, 128 S. Ct. at 574 *(quoting Gall,* 552 U.S. at —, 128 S. Ct. at 597).

Although the Guidelines remain "the starting point and the initial benchmark" in determining a sentence, the district court "may not presume that the Guidelines range is reasonable," but must "make an individualized assessment based on the facts presented." *Gall,* 552 U.S. at —, 128 S. Ct. at 596-97.   "[A]fter giving both parties an opportunity to argue for whatever sentence they deem appropriate, the district judge should then consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party." *Id.*, 552 U.S. at —, 128 S. Ct. at 596.   If the court decides that an outside-Guidelines sentence is warranted, the court must consider the extent of the

deviation and ensure that the justification is sufficiently compelling to support the degree of the variance. *Id.* The Supreme Court rejects, however, the notion that "'extraordinary' circumstances [are required] to justify a sentence outside the Guidelines range" and rejects "the use of a rigid mathematical formula that uses the percentage of a departure as the standard for determining the strength of the justifications required for a specific sentence." *Id.* at 595.

Congress established the Sentencing Commission ("the Commission") "to formulate and constantly refine national sentencing standards," in fulfillment of its important institutional role. *Kimbrough,* 552 U.S. at —, 128 S. Ct. at 57; *Rita v. United States,* 551 U.S. at —, 127 S. Ct. at 2464. When operating within that institutional role, the Sentencing Commission "has the capacity courts lack to 'base its determinations on empirical data and national experience, guided by a professional staff with appropriate expertise.'" *Kimbrough,* 552 U.S. at —, 128 S. Ct. at 574 (*quoting United States v. Pruitt,* 502 F.3d 1154, 1171 (10th Cir. 2007) (McConnell, J., concurring)); *see also Gall,* 552 U.S. at —, 128 S. Ct. at 594 (noting that "even though the Guidelines are advisory rather than mandatory, they are . . . the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions"). In formulating the Guidelines, the Commission developed and used data on past practices and recidivism. *See* United States Sentencing Commission, Fifteen Years of Guidelines Sentencing (Nov. 2004) ("Fifteen Year Assessment") at 14; U.S.S.G. § 1A.1, intro. comment., pt. A, ¶ 3; *Kimbrough,* 552 U.S. at —, 128 S. Ct. at 567. Based on these sentencing statistics, the Commission established the offense levels for each crime, linked to a recommended imprisonment range. Fifteen-Year Assessment at 14. Accordingly, in many cases the

Guidelines represent a reasonable estimation of a fair sentencing range.  *See Kimbrough,* 128 S. Ct. at 574.

However, for policy reasons and because statutory mandatory minimum sentences dictated many terms of the Guidelines, the Commission departed from past practices in setting offense levels for such crimes as fraud, drug trafficking, and child crimes and sexual offenses.  Fifteen-Year Assessment at 15, 72-73; *Kimbrough,* 552 U.S. at —, 128 S. Ct. at 567.  Consequently, the Guideline ranges of imprisonment for those crimes are a less reliable appraisal of a fair sentence.  *See Kimbrough,* 552 U.S. at —, 128 S. Ct. at 574-75.

When Guidelines are not the result of "the Commission's exercise of its characteristic institutional role," such as when they are not based on an empirical approach, but are instead keyed to or guided by statutory directives, a court is not presented with the "ordinary case," in which "the Commission's recommendation of a sentencing range will 'reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives.'"  *See, e.g., Kimbrough,* 552 U.S. at —, 128 S. Ct. at 574 (*quoting Rita*, 551 U.S. at —, 127 S. Ct. at 2465); *see also Gall,* 552 U.S. at —, 128 S. Ct. at 594 n.2 (noting that not all Guidelines are tied to empirical evidence).  In such cases, it is "not an abuse of discretion for a district court to conclude when sentencing a particular defendant" that application of the Guideline "yields a sentence 'greater than necessary' to achieve § 3553(a)'s purposes even in a mine-run case."  *Kimbrough,* 552 U.S. at —, 128 S. Ct. at 575.

The Guidelines for child exploitation offenses were not developed under the empirical approach, but were promulgated, for the most part, in response to statutory directives.  *See*, *e.g.,* U.S.S.G. App. C, Vol. I, Amends. 537 & 538 (Nov. 1, 1996); Vol. II, amend. 592 (Nov. 1, 2000), 615 (Nov. 1, 2001), 649 (April 30, 2003); Supp. Vol., amend.

651 (Oct. 27, 2003), 664 (Nov. 1, 2004); United States Sentencing Commission, Report to Congress: Sex Offenses Against Children, Findings and Recommendations Regarding Federal Penalties (June 1996) ("Sex Offenses Against Children Report").  The Commission itself acknowledges that "[t]he frequent mandatory minimum legislation and specific directives to the Commission to amend the Guidelines make it difficult to gauge the effectiveness of any particular policy change, or to disentangle the influences of the Commission from those of Congress."   Fifteen-Year Assessment at 73; United States Sentencing Commission, Special Report to Congress: Mandatory Minimum Penalties in the Federal Criminal Justice System 26 (Aug.1991) (noting that "mandatory minimums are both structurally and functionally at odds with sentencing guidelines and the goals the guidelines seek to achieve").

The text and structure of the criminal statute under which the defendant was charged, 18 U.S.C. § 2252, prohibit four categories of conduct with respect to child pornography:  (1) transporting or shipping child pornography in interstate or foreign commerce by any means, including by computer; (2) receiving or distributing child pornography that has been mailed, shipped or transported in interstate or foreign commerce by any means, including by computer; (3) selling, or possessing with intent to sell, child pornography that has been mailed or shipped in interstate or foreign commerce by any means, including by computer; and (4) knowingly possessing child pornography that has moved in interstate or foreign commerce by any means, including by computer.  18 U.S.C. § 2252(a)(1)-(4).  The first three categories of conduct are punishable, for a first time offender, by a minimum sentence of five years and a maximum sentence of 20 years. 18 U.S.C. § 2252(b)(1).  The fourth category, simple possession, carries a maximum sentence of ten years, with no mandatory minimum.  18 U.S.C. § 2252(b)(2).

At the inception of the Guidelines, simple possession of child pornography was not a crime and the relevant Guideline provision, § 2G2.2, was limited to "transporting, receiving, or trafficking" offenses.   *See* U.S.S.G. § 2G2.2 (1987).   The crimes of possession and possession with intent to sell were added to the statute as part of the Crime Control Act of 1990.  *See* Pub. L. No. 101-647, § 323(b), 104 Stat. 4789, 4818-19 (1990); *United States v. Vig,* 167 F.3d 443, 449 (8th Cir. 1999) (noting the expansion of Congress's enforcement authority as a result of the criminalization of the mere possession of child pornography).[1]  Correspondingly, Congress directed the Sentencing Commission to "amend existing Guidelines for sentences involving sexual crimes against children . . . so that more substantial penalties may be imposed if the Commission determines current penalties are inadequate." Pub. L. 101-647, 1990 S. 3266, Title III, § 323(a),(b), 104 Stat. 4789, 4819 (Nov. 29, 1990).  In response, the Commission proposed the creation of a separate Guideline provision, § 2G2.4, to cover possession, receiving or transporting child pornography with a base offense level of 10.  *See* Notice of Proposed Amendments to the

---

[1]Over the years, Congress has passed numerous laws of increasing severity that regulate child pornography and exploitation of children.  *See, e.g.,* the Protection of Children Against Sexual Exploitation Act of 1977, codified as amended at 18 U.S.C. §§ 2251-2253 (targeting the commercial production of visual or print depictions involving minors engaged in sexually explicit conduct); the Child Protection Act of 1984, codified as amended at 18 U.S.C. § 2253 (raising the age of a child for purposes of defining child pornography from sixteen to eighteen); the Child Protection and Obscenity Enforcement Act of 1988, codified as amended at 18 U.S.C. §§ 2251 & 2252(a) (criminalizing the use of computers to transport, distribute, or receive visual depictions involving minors and prohibiting the knowing interstate transportation and receipt of visual depictions of sexually explicit conduct involving a minor); the Sex Crimes Against Children Act of 1995, codified as amended at 18 U.S.C. §§ 2251 & 2252; the Child Pornography Prevention Act of 1996, codified as amended at 18 U.S.C. §§ 2251 (extending the prohibition against child pornography to sexually explicit images that appear to depict minors but were produced without using any real children), invalidated as unconstitutional in *Ashcroft v. Free Speech Coal.,* 535 U.S. 234 (2002), & 2252A (punishing, among other activities, anyone who "knowingly possesses any . . . material that contains an image of child pornography that has been mailed . . . in interstate or foreign commerce by any means, including by computer"); the Protection of Children from Sexual Predators Act of 1998, codified as amended at 18 U.S.C. § 2426 (increasing punishment for persons who misrepresent themselves as minors or use computers or Internet access devices to locate and gain access to minors and for repeat offenders); the Prosecutorial Remedies and Other Tools to End the Exploitation of Children Today Act of 2003 ("PROTECT Act"), codified as amended at 18 U.S.C. § 2252B (making it a criminal offense to use "a misleading domain name on the Internet with the intent to deceive a person into viewing obscenity or material constituting obscenity").

Sentencing Guidelines, 56 Fed. Reg. 1846-01, 1863, 1991 WL 310646 (proposed Jan. 17, 1991).  Under the Sentencing Commission's proposal, trafficking would continue to be covered in § 2G2.2, with a base offense level of 13.  *Id.* at 1863-64.

Later, over the objection of the Sentencing Commission, Congress, reacting to the erroneous perception that the Sentencing Commission had lessened penalties for child pornography crimes, again directed the Commission to alter the Guidelines.  *See* 137 Cong. Rec. H6736-02, H6737 (1991).  In doing so, Congress rejected the Sentencing Commission's advice and abandoned the studied empirical approach to child pornography sentencing.  *See id.* at H6738 (Correspondence to Congressman Edward R. Roybal from Sentencing Commission Chairman William Wilkins).  Congress explicitly directed the Sentencing Commission to increase the base offense level for simple possession from 10 to 13, to include "receiving" pornography in the Guidelines section that governed trafficking and transporting, to increase the base offense level for receiving, transporting, and trafficking from 13 to 15 and to add enhancements for the number of items possessed and for a pattern of activity involving the sexual abuse or exploitation of a minor.  *Id.* at H6741.

In 1995, Congress again directed the Commission to increase penalties for child pornography and other sex crimes against children.  *See* U.S.S.G. App. C., Vol. I, Amends. 537 & 538 (November 1996) (implementing the Sex Crimes Against Children Prevention Act of 1995, Pub. L. No. 104-71, H.R. 1240, 104th Cong., 109 Stat. 774 (1995) (enacted)); 141 Cong. Rec. H4122-01, 1995 WL 143978 (1995).  It also directed the Sentencing Commission to prepare a report and analysis of sex offenses against children and child pornography for submission to Congress.  Sex Crimes Against Children Prevention Act of 1995, Pub. L. No. 104-71, H.R. 1240, 104th Cong., 109 Stat. 774, 775 (1995) (enacted).

The Sentencing Commission carried out the directive by increasing the base offense levels for producing, trafficking, and possessing child pornography by two levels and adding a two-level enhancement for use of a computer. *See* Notice of Submission to Congress of Amendments to the Sentencing Guidelines, 61 Fed. Reg. 20,306, 20,307-08, 1996 WL 223875 (F.R.) (May 6, 1996) (to be codified at U.S.S.G. §§ 2G2.1, 2G2.2, 2G2.4). The Commission also added other amendments clarifying and broadening the definition of the "pattern of activity involving sexual abuse of a minor" enhancement to apply to conduct unrelated to the offense of conviction in order to "increase the sentences for the most dangerous offenders." Sex Offenses Against Children Report at i; *see* U.S.S.G. App C, Vol. I, amend. 537.

In its report to Congress, noting that "[i]t appears that a significant portion of child pornography offenders have a criminal history that involves the sexual abuse and exploitation of children," the Sentencing Commission recommended that Congress increase statutory maximum sentences for production of child pornography and double the statutory maximum for offenders with prior convictions for sex abuse crimes. Sex Offenses Against Children Report at ii. The amendments and recommendations were intended to "ensure lengthy incarceration of repeat sex offenders who show the greatest risk of victimizing children." *Id.* at i. Noting that it was constrained by the 1991 Congressional directive that cases involving receipt of pornography should be sentenced under the trafficking guideline rather than the possession guideline, the Commission contemplated consolidating the trafficking/receipt and possession guidelines in a future amendment in

order to reduce unwarranted disparity between convictions for receipt and those for possession.[2]  *Id.* at 11, 41.

In compiling and analyzing its statistics, the Sentencing Commission noted that federal prosecutions for child sex offenses represented a small percentage of the total number of such cases nationwide, the vast majority of which were prosecuted in state court.  *Id.* at i.  The Commission's analysis and recommendations with respect to child pornography possession cases were based on a statistical analysis of twenty-four cases that had been sentenced under U.S.S.G. § 2B2.4.  *Id.* at 12.  The Commission noted that eighty-six percent of those defendants would have been more appropriately sentenced under the trafficking/receipt guideline, which would have exposed them to additional upward adjustments.  *Id.* & n.9.

Congress responded to the Commission's report with new legislation increasing penalties for child pornography, exploitation and abuse.  Protection of Children From Sexual Predators Act of 1998, Pub. L. No. 105-314, 1998 H.R. 3494, 105th Cong., 112 Stat. 2974 (1995) (enacted).  Congress directed the Commission to increase penalties and add enhancements and to clarify that distribution included distribution for nonpecuniary gain.  *Id.,* 112 Stat. at 2980-82.  The Sentencing Commission then afforded expansive coverage to the meaning of distribution in U.S.S.G. § 2G2.2(b)(3)(A)-(F) and added several enhancements depending on the purpose and audience for the distribution.  U.S.S.G. App. C, Vol. II, amend. 592 (Nov. 1, 2000).

---

[2]The Commission contemplated that the consolidated guideline would have the higher base offense level of the pre-consolidation guideline, but a two-level downward adjustment would apply if the case involved the receipt or possession of fewer than 10 items with no intended distribution.  Sex Offenses Against Children Report at 41.

Congressional enactment of the Prosecutorial Remedies and Other Tools to End the Exploitation of Children Today Act of 2003 (the "PROTECT Act") established a five-year mandatory minimum sentence for trafficking/receipt offenses and made several direct amendments to the Guidelines.[3]  *See* PROTECT Act, Pub. L. No. 108-21, 2003 S. 151, 108th Cong., 117 Stat. 650, 653 (2003) (enacted); U.S.S.G. App. C, Vol. II, amend. 649 (April 30, 2003).  Implementing directives of the Act, the Sentencing Commission collapsed the guideline dealing with possession (formerly U.S.S.G. § 2G2.4) into the guideline dealing with trafficking of pornography (U.S.S.G. § 2G2.2).  *See* U.S.S.G. App. C, Supp. Vol., amend. 664 (Nov. 1, 2004).  To conform to the new mandatory minimum sentences and increased statutory maxima, the Sentencing Commission also raised base offense levels for trafficking/receipt offenses from 18 to 22 and base offense levels for possession from 15 to 18.[4]  *Id.*  The Commission also added specific offense characteristic enhancements and significant quantity-driven enhancements for the number of images possessed, received or distributed.  *See id.*  The Commission noted that enhancements for use of a computer and number of images would be applicable in every case, thus ensuring that the Guideline sentences would approximate the statutory mandatory minimum sentences.  *Id.*

The clear focus of this legislation and concomitant Guidelines revision is on the patent evils of child pornography and the new dimension that computer technology adds to those evils.  *See* Child Pornography Prevention Act of 1996, Omnibus Consolidated

---

[3]The PROTECT Act also increased the statutory maximum term of imprisonment t from 15 to 20 years for trafficking/receipt offenses under 18 U.S.C. § § 2252(a)(1)-(3) and 18 U.S.C. § 2252A(a)(1),(2),(3), (4) and (6) and increased the statutory maximum for possession offenses under U.S.C. § 2252(a)(4) and 18 U.S.C. § 2252A(a)(5) § from five to ten years.  PROTECT Act, Pub. L. No. 108-21, 2003 S. 151, 108th Cong., 117 Stat. 650, 653 (2003) (enacted)

[4]The former section 2G2.4 provided a base offense level of 15, which would generate a sentencing range of 18 to 24 months at Criminal History Category I.  The consolidated guideline results in a base offense

Appropriations Act, Pub. L. No. 104-208, § 121, 1996 H.R. 3610, 104th Cong., 110 Stat. 3009, 3009-26 (1996); *see also* notes following 18 U.S.C.A. § 2251.   In particular, amendments to the Guidelines reflect Congressional concerns that "pedophiles, including those who use the Internet, are using child pornographic and obscene material to desensitize children to sexual activity, to convince children that sexual activity involving children is normal, and to entice children to engage in sexual activity."   U.S.S.G. App. C., Vol. 2, amend. 592 (Nov. 1, 2000).   The primary victims of the crime of possession of pornography are the exploited children.  *See United States v. Rugh,* 968 F.2d 750, 756 (8th Cir. 1992).

### III.   ANALYSIS

#### A.   Guideline Calculation

The court first calculates the defendant's sentence under the advisory Guidelines. The court adopts the findings in the PSR.   In accordance with the plea agreement, the court finds Grinbergs's base offense level under the Guidelines is 18.   See U.S.S.G. § 2G2.2(a)(1).   The court also finds that a two-level increase under U.S.S.G. § 2G2.2(b)(2) (for possession of material containing a prepubescent minor), a two-level increase under U.S.S.G. § 2G2.2(b)(6) (for use of a computer), and a four-level increase under U.S.S.G. § 2G2.2(b)(7) (for possession of more than 200 but less than 600 images) are appropriate.[5] Accordingly, the defendant's adjusted offense level is 26.  The court finds an adjustment for acceptance of responsibility is warranted and the Government has moved for a three-level adjustment.   The court thus finds the defendant's total offense level under the

---

[5]Despite his stipulation to these enhancements in his plea agreement, Grinbergs argues that the enhancements are improper as arbitrary increases that were created without empirical data and that do not fulfill sentencing objectives.   These arguments are more properly addressed in the court's discussion of the 18 U.S.C. § 3553(a) factors.

Guidelines is 23.  At criminal history category I, the defendant's advisory Guidelines term of imprisonment is 46 to 57 months.

### B.    Departure

The court's determination of the Guideline sentence in a child pornography case does not generally include consideration of departure issues.  The court's authority to downwardly depart is controlled by the PROTECT Act.  18 U.S.C. § 3553(b)(2).  That Act amended 18 U.S.C. § 3553(b) to restrict the authority of the district courts to depart from the Guidelines in sexual offense and child pornography cases.  *Id*.  The PROTECT Act eliminated judicial departures for all reasons except those specifically authorized in Chapter Five, Part K, of the Guidelines Manual.  *Id*.  Post-PROTECT Act, downward guidelines departures for diminished capacity under § 5K2.13 are specifically disallowed for child crimes or sexual offenses.  *Id*.  In addition, "post-arrest rehabilitation must be 'of an extraordinary nature outside the heartland of cases' and not 'already accounted for by the Guidelines recommendations'" to warrant a Guidelines downward departure. *United States v. McFarlin,* — F.3d —, —, 2008 WL 2875830, *2 (8th Cir. July 28, 2008) (*quoting United States v. Donnelly,* 475 F.3d 946, 956 (8th Cir. 2007).  Accordingly, the court's calculation of the defendant's Guideline sentencing range will not include a departure.  However, because the Guidelines are now advisory, the court can still consider Grinbergs's mental capacity and extraordinary rehabilitation insofar as it is relevant to the § 3553(a) factors. *See United States v. Hadash,* 408 F.3d 1080, 1083-84 (8th Cir.2005); *United States v. White,* 506 F.3d 635, 645 (8th Cir. 2007) (noting that a district court may consider factors already taken into account in calculating the advisory Guideline range under 18 U.S.C. § 3553(a)).

### C.    Section 3553 Factors

#### 1.    Nature of the Offense

In considering the nature and circumstances of the offense, the court first finds possession of child pornography is a serious offense.  It is one of a class of crimes that involve commercial sex acts, sexual exploitation of minors, and obscenity covered by part G of the Guidelines.   Sexual exploitation offenses include the production of child pornography and the exploitation of children for the purposes of prostitution or pornography production, as well as trafficking in pornography.  Criminalizing the possession of child pornography is a necessary complement to laws banning distribution of such items, and is intended to destroy the market for exploitation of children.  Possession of pornography is the least serious of the crimes on the continuum of conduct–from possession to distribution to production to predatory abuse–that exploit children.  A possessor of child pornography is considerably less culpable than one who produces or distributes the exploitative materials and is a marginal player in the overall child exploitation scheme.   Notably, with respect to the circumstances of the crime, there is no evidence that Grinbergs shared or intended to share the materials with others.  The images were obtained through an e-mail account and not through a peer-to-peer file-sharing network.

#### 2.    Defendant's History and Characteristics

The court has also considered the defendant's history and characteristics.   The record shows that Grinbergs has a high school education and has attended some college. He has been steadily employed throughout his adult life.  He comes from a close family and still lives at home with his parents.  He served in the Army Reserve and was discharged

honorably.  He had absolutely no criminal history before he was charged with this offense and presents a low risk of reoffending.

The court credits the testimony of the experts who have treated Grinbergs for depression and dysthymic disorder.  The court finds that the defendant's mental condition, in conjunction with his adolescent mind-set and extremely low self-esteem, contributed to the offense.  The court credits the testimony that Grinbergs has made excellent progress in rehabilitation and has little likelihood of recidivism.  Prior to this conviction, Grinbergs had no criminal history.  He has served the sentence the court previously imposed on him.  He continues to participate in individual and group sex-offender counseling.  He has complied with stringent conditions of supervised release, including restrictions on travel, contact with minors, and use of the Internet.  He has a stable employment history.  The court finds that any further period of incarceration would serve no purpose and would interfere with Grinbergs's ongoing treatment.

Importantly, Grinbergs is not a pedophile, sexual predator or child abuser.  There is no dispute that he did not intend to share or distribute child pornography.  He has been examined by mental health professionals, who find that he is at low risk to reoffend.  Grinbergs has demonstrated remorse, which the court credits as sincere.  The court finds it is extremely unlikely that he will reoffend.  Further, the court notes that the defendant has already suffered serious consequences as a result of his actions.   A conviction for possession of child pornography carries considerable stigma.  Grinbergs has a felony conviction on his record, and will have to register as a sex offender.

### 3.      The Guidelines Range

In addition, the court has consulted and taken into account, as advisory, the kinds of sentence available and the applicable category of offenses and category of defendant

as set forth in the United States Sentencing Guidelines and policy statements. The court has used the Guidelines calculation as its initial starting point. However, in view of the fact that the child pornography Guidelines are statutorily-driven, as opposed to empirically grounded, the court finds that the Guideline ranges of imprisonment are not a reliable appraisal of a fair sentence in this case. Because the child pornography Guidelines do not reflect the Sentencing Commission's unique institutional strengths, the court affords them less deference than it would to empirically-grounded guidelines.

As noted, the defendant is at the low end of the culpability spectrum for crimes of this nature. The increase in the defendant's Guidelines sentence that results from application of the sentencing enhancements weighs in the court's calculus. The enhancements applied to his base offense level for use of a computer and for the number of images the defendant possessed inordinately affect his Guideline range. In Grinbergs's case, the enhancements more than double Grinbergs's sentence, increasing the low end of the recommended range from 18 months to 46 months.

Because the Internet has become the typical means of obtaining child pornography, virtually every offender will get a two-level enhancement for use of a computer. Also, because of the increased ability to easily and inexpensively capture and store images with computers, the number of images does not reliably provide the distinction between large-scale and small-scale child pornography purveyors that Congress and the Sentencing Commission envisioned when promulgating the enhancement. Legislative history shows Congressional concern for the ability of computers to lure or entice children into sex acts. Grinbergs's crime does not involve any such conduct.

The Sentencing Commission has acknowledged that these enhancements are expected to apply in most cases, with the effect that the Guidelines will mirror the statutory mandatory minimum sentence for receiving/trafficking offenses under 18 U.S.C. § 2252(a)(1)-(3). Application of those enhancements, admittedly designed to dovetail with the statutory mandatory minimum sentence for trafficking, to a case of mere possession that does not involve a mandatory minimum is anomalous. With respect to conformity with the statutory range of punishment, Grinbergs is an example of a defendant who deserves a sentence closer to the low end than to the maximum. In the case of mere possession of child pornography, without more, he deserves a sentence closer to zero.

### 4.    Sentencing Disparity

The court has also considered the need to avoid sentencing disparities. Because there is no evidence that Grinbergs either intended to share or distribute the child pornography or that he received any economic benefit from it, the defendant is not in the same category as most other defendants convicted of possession of child pornography. Possession of child pornography was criminalized in part because of concerns that the Internet facilitated access to and enticement of minors for sexual exploitation, as well as concerns that pedophiles use the materials to desensitize and entice victims. The defendant's crime does not fit either scenario. Importantly, the court has been presented with evidence that Grinbergs is not a pedophile or a sexual predator. His conduct did not involve actual abuse, enticement, or even contact with any victims. He does not fall within the class of the most dangerous child pornography offenders who present a high potential for recidivism and who are the target of the recent harsh statutory and Guideline revisions.

21

A sentence of 12 months and one day is in line with the sentences imposed on similar defendants convicted of only possession of child pornography.

This sentence more closely approximates the sentencing range that was in effect before the Sentencing Commission merged the child pornography possession guideline into the trafficking guideline, thus maintaining the important qualitative distinctions between "mere possession" and "distribution" of child pornography.  The far greater culpability of an actual predator or abuser should be reflected in a sentence that greatly exceeds the punishment for the exploitative crimes that do not involve acts of abuse by a defendant.

## IV.    CONCLUSION

Accordingly, the court finds a sentence of twelve months and one day will satisfy the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant; and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.   The court finds, under the circumstances of this case, that a sentence of incarceration shorter than the sentence recommended under the Guidelines reflects the seriousness of the offense and provides just punishment.  The mere fact of Grinbergs's prosecution deters others from engaging in this sort of conduct, and a sentence of incarceration will act as a further deterrent to others contemplating such activity.  The value of any longer sentence as a deterrent, over and above these other factors, would be marginal.  Given that the benefit to society of any further incarceration of this defendant would be negligible, any benefit is outweighed by the potential harm caused by the negative impact further imprisonment would have on Grinbergs's treatment and his prospects of remaining a productive citizen.

A Judgment and Commitment and Statement of Reasons in accordance with this

Sentencing Memorandum will issue this date.

DATED this 8th day of September, 2008.

BY THE COURT:


s/ Joseph F. Bataillon
Chief United States District Judge